(USAO GAN 6/10) Search Warrant

FILED IN CHAMBERS
U.S.D.C. – Rome
JUL 23 2018
JAMES N. HATTEN
By: _____ Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

A black Apple iPhone telephone, model A1661 with UDID: 1a2ddd4800318a1696f3808f48f0771d12c9b3eb

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**
Case number: 4:18-MC-35

I, Mitchell Jackson, being duly sworn depose and say:

I am a Special Agent of the Federal Bureau of Investigation and have reason to believe that in the property described as:

- *Subject Telephone* - a black Apple iPhone telephone, model A1661 with UDID: 1a2ddd4800318a1696f3808f48f0771d12c9b3eb

in the Northern District of Georgia, there is now concealed certain property, certain information, and certain data, namely:

### SEE ATTACHMENT A

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Sections 841 and 846. The facts to support a finding of Probable Cause are as follows:

### SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my presence

_____
Signature of Affiant
Mitchell Jackson

July 23, 2018
Date

Rome, Georgia
City and States

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

AUSA Jeffrey W. Davis

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, MITCHELL JACKSON, being duly sworn, states as follows:

### A. Agent Experience

1. I am a Federal Bureau of Investigation ("FBI") Special Agent assigned to the Atlanta Field Office, Rome Resident Agency. As a Special Agent of the FBI, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516

2. I have been a Special Agent with the FBI since August 2010. Prior to employment with the FBI, I was employed as a law enforcement agent by a state law enforcement agency for 10 years. During my tenure in law enforcement, I have participated in felony investigations of state and federal law that included numerous death, sexual assault, controlled substances, child pornography, drug trafficking, and RICO investigations, as well as numerous other violations of law. I graduated from the FBI Academy where I received training in the investigation of crimes as well as utilizing technology in investigations, such as utilizing cellular telephone data, pen register/trap and trace, cellular location information, computer electronic storage. I have participated in numerous large scale investigations that targeted organizations that utilized cellular telephones to communicate and operate. I also have used communications data to assist in numerous investigations through data analysis and to locate subjects of investigations.

3. In addition, I have learned through my training and experience that drug traffickers and illegal possessors of firearms will regularly pose for photographs while in possession of drugs and firearms for posting on social media sites or for

personal display in their residences. I have learned through my training and experience that drug traffickers will maintain notes, ledgers, journals, and/or documents for the purpose of tracking their drug purchases/sales and monetary proceeds. I have also learned through my training and experience that drug traffickers will utilize cell phones, computers, and other electronic media devices to coordinate the purchase/sale/distribution of drugs.

### B. Subject Telephone

4. Pursuant to Federal Rule of Criminal Procedure 41, I submit this Affidavit in support of a warrant authorizing the seizure of and data extraction from the:

   a. *Subject Telephone*: a black Apple iPhone telephone, model A1661 with UDID: 1a2ddd4800318a1696f3808f48f0771d12c9b3eb, currently secured in an FBI off-site vault in Cartersville, Georgia.

As set forth herein, there is probable cause to believe that in/on the Subject Telephone exists evidence, fruits, and instrumentalities of violations of federal law, including: Title 21, United States Code, Sections 841 and 846 (controlled substance offenses).

### C. Cellular Phones

5. Based on my training and experience, participation in criminal investigations, and the training and experience of other officers and agents with whom I am working, I know that:

   a. Many cell phones have advanced capabilities, including: Internet browsing, text and e-mail, photography and video storage, notes, calendars, and data file storage. I am also aware, through training and experience, that people commonly use cell phones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names and

2

addresses; obtain and store directions and maps; search the Internet and capture audio, image, and video files.

b. Drug traffickers and money launderers frequently use cellular telephones and keep a list of names and numbers of customers, suppliers, and coconspirators in the electronic address books of their cellular telephones. Such cell phones will also carry information in a SIM (Subscriber Identity Module) or SD (Secure Digital memory) card, or some other type of electronic storage card or drive, which will reveal that information along with the number of the cell phone and other information indicating the identity of the user.

c. Drug traffickers and money launderers use cellular telephones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names, addresses, and telephone numbers of co-conspirators; obtain and store directions and maps; maintain photographs of criminal associates; search the Internet; and capture audio, image, and video files. Records of these activities are often stored in the memory of cellular telephones.

d. Furthermore, I know that it is common for drug traffickers and money launderers to possess and use multiple cellular telephones to facilitate their unlawful conduct. Indeed, it is my experience that they purposefully use multiple communication devices so as to not alert law enforcement of the complete scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. By way of example only, a drug trafficker or and money launderer may have one

cellular telephone used to call their drug source of supply, another telephone used to call customers, and yet another to call drug distributors, in addition to a telephone for personal use.

e. In addition, I have learned through my training and experience that drug traffickers and illegal possessors of firearms will regularly pose for photographs while in possession of drugs and firearms for posting on social media sites or for personal display in their residences. I have learned through my training and experience that drug traffickers will maintain notes, ledgers, journals, and/or documents for the purpose of tracking their drug purchases/sales and monetary proceeds. I have also learned through my training and experience that drug traffickers will utilize cell phones, computers, and other electronic media devices to coordinate the purchase/sale/distribution of drugs.

In short, cellular telephones are vital instruments to drug traffickers and may contain many different types of significant evidence of their criminal activities.

## D. Search Execution

6. If the instant search warrant is granted, the Subject Telephone will be examined by a Forensic Specialist from the FBI. The examination of the Subject Telephone will include a physical search of the phone via the use of a proprietary data/lock extraction device. This type of search will likely result in the recovery of data that has been previously-deleted (including the recovery of deleted text messages and/or web browsing data). In most cases, previously-deleted data will be recovered, unless the data has been over-written by the addition of new content on the cell phone. I know that most modern phones (especially smart phones)

have large storage capacities, which increases the likelihood that the previously-deleted data has not been over-written with new content and is, therefore, recoverable.

7. Given that this search warrant application seeks permission to examine a device already in law enforcement's possession, the execution of the requested warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### E. Sources of Information

8. The facts set forth in this affidavit are based on my personal observations and knowledge, and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

### F. Probable Cause Basis

9. Hays State Prison is a Georgia Department of Corrections ("DOC") state prison for men located on in Trion, Chattooga County, Georgia. The facility opened in 1990 and currently has a capacity of approximately 1680 prisoners.

10. On the exterior fence and entrance gate to Hays State Prison, the DOC has posted signs reading:

> WARNING! You are entering a secure law enforcement facility operated by the Georgia Department of Corrections. To maintain the safety and security of this facility, the actions of everyone entering this facility will be closely monitored. Everyone entering this facility and the areas surrounding this facility may be searched at any time. By seeking to enter this facility, you consent to the following: Everyone is subject to a search of their person and property at any time. This includes searches by the use of X-Ray devices, metal detectors, body scanners, and pat down searches. Everyone is subject to verification of their identity using fingerprint scanning devices and searches of law enforcement records to verify your identity and any outstanding warrants. Everyone entering this facility consents to monitoring of their activities and conversations using video and audio surveillance in all areas of this facility. The only exception to this is approved attorney communication with their client. It is a felony to bring any type of contraband into this facility. Anyone attempting to bring contraband into this facility will be arrested and prosecuted. If you are unsure if an item is considered contraband you must declare the item prior to passing through the security checkpoint. Anyone attempting to leave the grounds in an attempt to avoid passing through established security measures is subject to being stopped and searched, and then prosecuted if illegal contraband is found. By order of the Commissioner of Department of Corrections.

11. Hays State Prison also has multiple signs at the "guard lines[1]" reading "WARNING You are now entering the guard line of Hays State Prison ... Any

---

[1] The "guard lines" are an established perimeter surrounding the prison that are considered a protected space due to the proximity to the prison grounds. The guard lines serve as a buffer between the general public and the prison and are in place to provide security to employees, visitors, inmates, and the general public. The Commissioner of the DOC has authority that is delegated to Prison Wardens to enact searches inside the guard lines of correctional facilities to ensure the safety of employees, visitors, inmates, and the general public.

person or motorized vehicle entering beyond this point is subject to being searched including a search by drug dogs."

12. Since approximately 2010, Tiffany COOK has been employed by the DOC and since April 2017, COOK has served as a correctional officer at Hays State Prison.

13. On July 6, 2018, DOC Captain Gabriel Illa received information from an inmate at Hays State Prison that COOK would be attempting to smuggle illegal drugs into Hays State Prison on Monday, July 9, 2018. The inmate provided specific information that COOK smuggled narcotics into Hays State Prison on Mondays and Thursdays for inmate Jermaine Revere (a/k/a "Bird") in exchange for $3,000 per week. Captain Illa knew that both COOK and inmate Revere worked in the prison barbershop. Captain Illa also knew that in January 2018, COOK had complained that she had no money, but since then COOK has purchased a 2017 Toyota 4-Runner and a ski boat.

14. On July 9, 2018, COOK arrived at Hays State Prison to report for her regularly-scheduled shift. As COOK approached the time clock, DOC guards asked COOK to walk into a conference room.

15. Following that request, COOK stated that she felt ill and wanted to leave the prison. DOC detained COOK, who was ultimately searched by DOC Officers J. Clark, T. Dargin, and M. Keena.

16. Pursuant to their search, the DOC recovered more than 28 grams of suspected: (a) methamphetamine,[2] (b) heroin, and (c) marijuana (all schedule I

---

[2] A field test of the substance recovered tested positive for methamphetamine.

7

controlled substances) from COOK's vaginal cavity and bra. After seizing the methamphetamine, heroin, and marijuana, DOC placed COOK under arrest.

17. On July 9, 2018, COOK vehicle (a 2017 Toyota 4-Runner, bearing Georgia License plate CHR 6819) was parked inside the guard lines at Hays State Prison and was within the protected perimeter designated by the guard line signs. The registration for this vehicle returns to Imogene Cook and Tiffany COOK.

18. DOC personnel searched COOK's car by unlocking it with her keys. From the center console, DOC recovered: (a) a loaded Glock Model 19 semi-automatic 9mm caliber handgun, and (b) the Subject Telephone. Notably, the DOC prohibits guards from having firearms in any vehicle parked inside the guard lines.

19. On the lock screen of the Subject Telephone, DOC saw a missed call from "Bird" at 6:43 a.m. (DOC first encountered COOK at 6:10 a.m). The FBI believes that Revere (a/k/a "Bird") called COOK because he expected to have received confirmation from her or to have met with her after she successfully smuggled the drugs listed above into the prison. The FBI further believe that because Revere did not hear from COOK when he expected, Revere called COOK to see where she was located.

20. I believe that the Subject Telephone contains communications, contact information, and may contain photographs and payment/finance information (among other evidence) indicative of COOK's drug trafficking and contraband smuggling activities.

## G. Conclusion

21. Based upon the information above, probable cause exists to believe that on/in the Subject Telephone there exists evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846. By this Affidavit and Application, I request that the Court issue a warrant to seize and search the Subject Telephone for evidence and data/information, in accordance with the procedures listed in Attachment A.

## G. Conclusion

21. Based upon the information above, probable cause exists to believe that on/in the Subject Telephone there exists evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846. By this Affidavit and Application, I request that the Court issue a warrant to seize and search the Subject Telephone for evidence and data/information, in accordance with the procedures listed in Attachment A.

# ATTACHMENT A

1. **Object to be Searched**

    a. *Subject Telephone*: a black Apple iPhone telephone, model A1661 with UDID: 1a2ddd4800318a1696f3808f48f0771d12c9b3eb, currently secured in an FBI off-site vault in Cartersville, Georgia.

2. **Search Procedure**

    a. Law enforcement personnel will review and examine all data and information stored on/in the Subject Telephone and then determine the information to be seized by law enforcement personnel in accordance with Section 3.

3. **Information to be Seized by Law Enforcement Personnel**

    a. Any and all stored communications, data, and files stored in/on or deleted from the Subject Telephone, including but not limited to, call log information, web browsing information, translation information from the Internet or from a translation application, phone directory/address book information (including emails), note pad details, content of text messages or other electronic communications, voice mail or other audio messages, recordings of incoming calls, calendar information, all of which are in/on the above-listed electronic device and/or the Subscriber Identity Module ("SIM") card associated with said device, which evidence the commission of or involvement in a violation of 21 U.S.C. §§ 841 and 846, other related scheme, and/or connection to known and as yet unidentified co-conspirators in the investigation;

    b. Photographs, videos, records, other electronic media which evidence the commission of or involvement in a violation of 21 U.S.C. §§ 841 and 846, and other related schemes, and/or connection to known and as yet unidentified co-conspirators in the investigation;

    c. Evidence of user attribution showing who used or owned the Subject Telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; and

    d. For authentication purposes at trial, the FBI will maintain a forensic copy of the Subject Telephone.